2017 OK CIV APP 46

CABLE ONE, INC., Plaintiff/Appellee,

v.

OKLAHOMA STATE BOARD OF EQUALIZATION, and Oklahoma Tax Commission, Defendants/Appellants.

Case Number: 113818

Court of Civil Appeals of Oklahoma, Division No. 2.

Decided: 03/24/2017

Mandate Issued: 10/03/2017

William K. Elias, ELIAS BOOKS BROWN & NELSON, Oklahoma City, Oklahoma, and Cherie R. Kiser, pro hac vice, CAHILL GORDON & REINDEL, LLP, Washington, DC, and Thorn Rosenthal, pro hac vice, CAHILL GORDON & REINDEL, LLP, New York, NY, for Plaintiff/Appellee.

Joe M. Hampton, Amy J. Pierce, CORBYN HAMPTON, PLLC, Oklahoma City, Oklahoma, and Lee Pugh, GENERAL COUNSEL, OKLAHOMA TAX COMMISSION, Taylor P. Henderson, ASSISTANT GENERAL COUNSEL, Oklahoma City, Oklahoma, for Defendants/Appellants.

JERRY L. GOODMAN, JUDGE:

¶1 Plaintiff Cable One (Cable One) and Defendants Oklahoma State Board of Equalization (OSBE) and Oklahoma Tax Commission (OTC) (collectively OSBE/OTC) appeal the trial court's March 15, 2015, judgment. Cable One asserts the trial court erred in finding Cable One was a "transmission company" and OSBE/OTC assert the trial court erred in finding Cable One was not subject to ad valorem taxation despite being a cable television company offering phone services.

¶2 The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(1), 12 O.S.2011, Supp. 2013, Ch. 15, App. 1 and *In Re Amendments to Oklahoma Supreme Court Rules*, 2013 OK 67, —— P.3d ——.

¶3 Based on our review of the facts and applicable law, we reverse in part, affirm in part, and remand for further proceedings.

**BACKGROUND**

¶4 According to its December 20, 2013, petition,[1] Cable One alleged it is a Delaware corporation authorized to do business in Oklahoma as a cable television company offering cable television, cable modem (internet access) and interconnected Voice over Internet Protocol (VoIP) services to Oklahoma subscribers within a defined geographic area. It claims it has traditionally been locally valued and assessed ad valorem taxes by the assessor in the counties in which it owns property. However, for tax year 2013, OSBE/OTC reclassified Cable One as a public service or public transmission company to be centrally valued and assessed ad valorem taxes, which OTC collects. Cable One contends this was error. It seeks a refund of excess ad valorem taxes paid pursuant to the central assessment, and injunctive relief enjoining OSBE/OTC from centrally assessing ad valorem taxes for tax year 2013 and future tax years.

### I. Ad Valorem Provisions

¶5 Oklahoma's Ad Valorem Tax Code, 68 O.S.2011 and Supp. 2015 2801 through 2899, requires the "property of all ... public service corporations shall be assessed annually by the State Board of Equalization...." 2847(A). A public service corporation is defined as follows:

    A.  As used in the Ad Valorem Tax Code:

    1.  "Public service corporation" means all ... transmission companies, ...;

    ...

    3.  "Transmission company" means any company, corporation, ... owning, leasing or operating for hire any ... telephone line ...;

    ...

    B.  As used in the Ad Valorem Tax Code, "transmission company" and "public service corporation" shall not be construed to include cable television companies.

2808(A), (B).

### II. Central vs. Local Ad Valorem Taxation

¶6 Property owned by a public service company may be centrally valued and

---

1. Cable One filed two petitions. The first, filed December 14, 2013, as CJ-2013-6994, and the second, filed July 17, 2014, as CJ-2014-4056, were consolidated under the former number in an order of consolidation filed August 7, 2014.

assessed by OSBE/OTC, but property not owned by a public service company is locally valued and assessed by the county assessor of each county in which such property is located. 2819, 2847(A). Further,

The Okla. Const. art. 10, 21(A) unambiguously divides the types of property to be assessed centrally by the Board of Equalization from the types of property which are to be assessed locally by county assessors. The Board of Equalization may not lawfully assess non-public service corporation property.

*EOG Res. Mktg., Inc. v. Oklahoma State Bd. of Equalization*, 2008 OK 95, ¶ 31, 196 P.3d 511, 524.

### III. Technology Changes

¶ 7 OSBE/OTC allege that just prior to tax year 2013, Cable One began offering fixed, two-way telephone service using VoIP services in addition to its one-way cable television service. VoIP interconnects with the public switched telephone network (PSTN). A PSTN is the traditional telephone service network. A fixed VoIP means the customer can only access the PSTN from one location, *e.g.*, the customer's home. This differs from internet telephony services, such as Skype or Vonage, which rely solely on the internet to transmit voice calls and thus can be accessed from anywhere. Cable One customers instead must use the same landline network which delivers internet and cable TV services to make phone calls. The phone call is transmitted on the Cable One line to a "headend," a building housing the interface between the Cable One line and the internet. The call is transferred to a third-party PSTN, in this case, Level 3 Communications, Inc. The call is then transmitted using the internet to its destination. OSBE/OTC alleges that, to the customer, there is no appreciable difference between a phone call made using VoIP/Internet and a call made using traditional telephone technology.

¶ 8 OSBE/OTC argues that with the introduction of VoIP services, Cable One became a transmission company as defined by 2808(A)(3). (" 'Transmission company' means any company, corporation, ... owning, leas-

ing or operating for hire any ... telephone line ...").

¶ 9 Cable One on the other hand contends it does not own a telephone line. Instead, it contracts with a third-party that owns a telephone line. The landline it provides to its customers is not a telephone line and cannot connect to the PSTN. It argues the statutory exemption contained in 2808 is dispositive. Finally, it argues it cannot be treated differently than other similarly-situated cable television companies which are locally assessed.

¶ 10 Cable One asked the trial court for a declaratory judgment that it was not a public service or transmission company and that central assessment of ad valorem taxes was an improper exercise of the jurisdiction of OSBE/OTC. It further sought an injunction from future central assessments.

¶ 11 On October 31, 2014, OSBE/OTC sought summary judgment. Following a hearing, the trial court entered the following order. In its March 10, 2015, journal entry of judgment, the trial court found:

a. [ ]Cable One is a "cable television company" within the meaning of [68 O.S.2011, 2808(B) ]. The Court further finds that Cable One is also a "transmission company" pursuant to [68 O.S.2011 2808(A)(3) ]. ... Pursuant to [ 2808(B),] a "transmission company" shall not be construed to include "cable television companies" and thus Cable One shall be construed as a "cable television company" pursuant to ... 2808(B).

b. As a "cable television company" under ... 2808(B), Cable One is not subject to central assessment of its Oklahoma property for ad valorem taxation.

¶ 12 The trial court then went on to find OSBE and OTC had no jurisdiction to centrally assess ad valorem taxes for tax years 2013 and 2014; that Cable One was entitled to a refund equal to the amounts it paid in centrally accessed ad valorem taxes and what it would have paid under local county tax assessment; and enjoined OSBE and OTC from centrally assessing ad valorem taxes on Cable One's property as long as it remained a cable television company under 2808(B).

¶ 13 OTC and OSBE appealed, alleging the trial court erred in its determination that Cable One was not subject to central ad valorem taxation. Cable One cross-appealed, alleging the trial court erred when it found Cable One to be a "transmission company." Both appeals are before us for review.

## STANDARD OF REVIEW

¶ 14 We review the trial court's order granting summary judgment under a *de novo* standard. *Wathor v. Mutual Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 4, 87 P.3d 559, 561.

## ANALYSIS

¶ 15 For purposes of this appeal, the property of a "public service corporation" is subject to ad valorem taxation. 68 O.S.2011, 2803(A)(4). A public service corporation is defined to include a "transmission company." 2808(A)(1). A transmission company is one that owns, leases, or operates for hire a telephone line. 2808(A)(3). However, neither a " 'transmission company' [nor a] 'public service corporation' shall [ ] be construed to include cable television companies." *Id.*

¶ 16 The trial court's order made a finding that Cable One was both a cable television company and a transmission company. However, because a transmission company cannot include a cable television company, the trial court found Cable One to be excluded from centrally collected ad valorem taxes.

The primary goal of statutory construction is to determine legislative intent. This must be ascertained from the statute's language in light of its general purpose and object. Statutory construction that would lead to an absurdity will be avoided if this can be done without contravening the legislative intent. A reasonable and rational construction is preferred.

*Jackson v. Mercy Health Ctr., Inc.*, 1993 OK 155, ¶ 11, 864 P.2d 839, 844-45 (footnotes omitted).

¶ 17 The trial court's order finding Cable One to be a transmission company is incompatible with its finding that Cable One is a cable television company for the reason that, by definition, a transmission company cannot include a cable television service. Cable One can be a transmission company or a cable television company, but by definition, cannot be both. Although the trial court correctly reasoned that Cable One was, in the end, a cable television company, which the evidentiary record amply supports, its initial finding that Cable One was also a transmission company was incorrect.

¶ 18 The record does not support a finding that Cable One meets the statutory definition of a transmission company, which, for ad valorem taxation purposes, is found at 2808(A)(3): " 'Transmission company' means any company, corporation, trustee, receiver, or other person owning, leasing or operating for hire any telegraph or telephone line or radio broadcasting system." Clearly, the record shows Cable One neither owns, leases, nor operates a telephone line. While it may contract with, and gains a benefit from, a company that does own, lease, or operate a telephone line, Cable One has shown that it owns no property subject to 2808(A)(3). The trial court's order finding the contrary was error and is reversed.

¶ 19 The remainder of the trial court's order is affirmed. As found by the trial court, Cable One is a cable television company subject to local ad valorem assessment.

## CONCLUSION

¶ 20 The trial court's March 10, 2015, order is reversed in part and affirmed in part. The matter is remanded to the trial court for further proceedings.

¶ 21 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, P.J., concurs, and RAPP, J., specially concurs in part and dissents in part.

RAPP, J., specially concurring in part and dissenting in part:

¶ 1 I respectfully specially concur in part and dissent in part.

¶ 2 I agree that Cable One, Inc. (COI) is not a transmission company *under the tax code*, but only insofar as its business is cable television. 68 O.S.2011 and Supp. 2015, 2801-

2899. However, I would limit the scope of that ruling to provide that COI's television cable business is not a transmission company *for purposes of the Oklahoma Tax Code*. This limitation is consistent with the provision in Section 2847(B) that the definitional exemption applies "As used in the Ad Valorem Tax Code." Therefore, I specially concur, in part, that COI is not a transmission company, but I would limit that ruling to purposes of the Ad Valorem Tax Code and COI's cable television business component.

¶ 3 I dissent from the ruling that the telephone component of COI's business is included in the Ad Valorem Tax Code exemption. Section 2808(B) of the statute, as amended in 2010, provides:

> B.  As used in the Ad Valorem Tax Code, "transmission company" and "public service corporation" shall not be construed to include cable television companies.

¶ 4 Here, "cable television," "internet access" and connection to Voice Over Internet Protocol (VoIP) are not shown to be identical forms of service. While it is not clear when COI (or any other cable television company) initiated its telephone service component, the fact is that the statute's exemption language does not mention the three forms of service.

¶ 5 I would hold that the statute is ambiguous and that the construction of the statute by the state agencies is reasonable and conforms to the general policy of the State of Oklahoma. Thus, under the *Chevron* doctrine,[1] this Court will defer to the agencies' interpretation and not disturb their conclusion. Schulte Oil Co., Inc. v. Oklahoma Tax Comm'n, 1994 OK 103 n.5, 882 P.2d 65 n.5.

¶ 6 The United States Supreme Court applied the *Chevron* doctrine in review of the interpretation of the phrase "telecommunications service." National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967, 980, 125 S.Ct. 2688, 2699, 162 L.Ed.2d 820 (2005) ("If a statute is ambiguous, and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.")[2]

¶ 7 The Federal Communications Commission (FCC) had ruled that cable modem service was not telecommunications service. The FCC construed the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996. The FCC ruled that cable companies providing broadband internet access did not provide "telecommunications service" as the Communications Act defined that term, and thus were exempt from mandatory common-carrier regulation.

¶ 8 The Supreme Court distinguished telecommunications service from broadband internet access. The Court reviewed the technical differences between "telecommunications services" and "cable modem services" and concluded that the two services were not the same. The Court confirmed an FCC ruling that cable companies providing broadband internet service were not providers of telecommunications service and thus were exempt from regulation. In so doing, the Supreme Court applied the *Chevron* doctrine because the statute did not unambiguously classify and define the two types of service.

¶ 9 *American Council on Education v. Federal Communications Commission*, 451 F.3d 226 (D.C. Cir. 2006), is a case that exemplifies the point that an unambiguous statute governs the result. The FCC had ruled that providers of broadband internet access and voice over internet protocol services were subject to regulation as "telecom-

---

1.  Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Court discussed *Chevron's* meaning in *National Cable & Telecommunications Ass'n*, 545 U.S. at 980, 125 S.Ct. at 2699 (citations omitted).

    In Chevron, this Court held that ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion. Filling these gaps, the Court explained, involves difficult policy choices that agencies are better equipped to make than courts. If a statute is ambiguous, and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.

2.  The issue was "whether cable companies providing cable modem service are providing a 'telecommunications service' in addition to an 'information service.'" *National Cable & Telecommunications Ass'n*, 545 U.S. at 986, 125 S.Ct. at 2702-03.

munications carriers" under Communications Assistance for Law Enforcement Act (CALEA).

¶ 10 The Court examined the CALEA specificity of definition of "telecommunications carrier" and compared that to the less specific definition in the Telecommunications Act. The Court determined that the FCC interpretation was reasonable and in accord with the provisions of CALEA.

¶ 11 I am of the opinion that the component of COI used in providing telephone service is not exempt under the Ad Valorem Tax Code. It is not uncommon for public service companies to have dual purposes and the statutes require them to account accordingly. *See*, 17 O.S.2011, 154.[3]

¶ 12 Therefore, I would remand this matter to the Appellants for the purpose of ascertaining the taxable portion of COI's business that is not exempt.

**3.** Section 154 reads:
In case the owner or operator of any public utility is engaged in carrying on any other business in connection with the operation of such public utility, the Commission may require the cost of the operation and gross revenues of such joint business to be kept in such form and manner as may be prescribed by the Commission so that the cost of the operation and gross revenues of the public utility may be ascertained,